IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. ODUM, | ) | CASE NO. 4:08 cv 174 |
| | ) | |
| Plaintiff, | ) | JUDGE ECONOMUS |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J.ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael A. Odum's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On May 22, 2002, Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of October 26, 2001 due

1

to limitations related to back problems, degenerative arthritis, high cholesterol, stomach ulcers, and knee problems. On April 24, 2007, Administrative Law Judge ("ALJ") Thomas R. King determined Plaintiff had the residual functional capacity ("RFC") to perform a unskilled light work activities that do not involve exposure to heights, are performed indoors, and avoid direct contact with others, and therefore, was not disabled (Tr. 25-31). On appeal, Plaintiff claims the ALJ's determination is not supported by substantial evidence.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on May 1, 1969 (age 37 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416. 963. Plaintiff completed high school and received training as a truck driver, and has past relevant work as a fast food worker, dishwasher, roofer, product loader, and stocker (Tr. 131-33).

### B. Medical Evidence

Plaintiff was in an automobile accident in November 2001 (Tr. 338). Plaintiff went to the VA clinic for treatment and started seeing Jack B. Salomon, M.D., on November 6, 2001 (Id.). Lumbar spine x-rays at that time showed a suggestion of early minimal degenerative changes (Tr. 293). Cervical spine x-rays showed a suggestion of early minimal degenerative changes at C5 and C6 (Id.).

Parduman Singh, M.D., examined Plaintiff for the first time on August 22, 2002 (Tr. 209). Plaintiff had an antalgic gait, he could heel and toe stand, and he could stand on either foot (Tr. 210). Cervical and lumbar spine motion was minimally reduced, motion of the extremities

was normal, and straight leg raising was normal (Id., Tr. 213-14). Muscle strength in the extremities was normal, reflexes were reduced in the upper extremities and normal in the lower extremities, sensation was decreased in the right lower extremity, and there was no spasm in the lumbar spine (Tr. 210). Bilateral grasp, manipulation, pinch, and fine coordination were normal (Tr. 212). Dr. Singh concluded there was no clear pattern of radiculopathy (Tr. 210). Dr. Singh also opined that Plaintiff could sit and stand normally, but that his capacity to lift and carry was reduced (Id.). Plaintiff complained of persistent low back pain with numbness of the right lower extremity which tends to give out (Id.). Dr. Singh opined that an MRI of the back would be helpful (Id.).

Donald Degli, M.A., performed a psychological evaluation on October 22, 2002 (Tr. 215). Plaintiff reported that he did homemaking and child rearing, drove a car, built model cars, and spent a lot of time with his son (Tr. 216). The psychologist opined that Plaintiff has adequate intellect to follow directions and do routine tasks in a mildly competitive workplace (Tr. 217). He has the ability and judgment to manage money matters appropriately (Id.). Plaintiff may be mildly impaired in his ability to meet the demands of competitive adult employment, without regard to whatever physical limitations he may have (Id.).

On August 25, 2003, Plaintiff reported to the VA that while getting up from the couch at home, his right leg went numb and he fell (Tr. 308). When Plaintiff tried to straighten the right leg, it snapped and now he could not bear weight on it (Id.). On August 27, 2003, lumbosacral spine x-rays revealed minimal degenerative arthritic changes of some of the vertebral bodies, with minimal marginal spur formation (Tr. 291). Right knee x-rays were normal (Tr. 290).

Dr. Singh examined Plaintiff on September 3, 2003 (Tr. 238). Plaintiff was on crutches (Tr. 238). Cervical spine and upper extremity motion was normal, hip and ankle motion was normal, right knee motion was slightly reduced, and left knee motion was normal (Tr. 242-44). Lumbar spine studies were unreliable because of Plaintiff's instability (Id.). Bilateral grasp, manipulation, pinch, and fine coordination were normal (Tr. 241). Muscle strength was normal, there was no atrophy, there was no spasm, reflexes were reduced, and sensation was normal except at the right knee (Tr. 239, 241-42). Dr. Singh noted Plaintiff's right knee problems seemed to be temporary (Tr. 239). Plaintiff was able to handle and manipulate objects with either hand quite well (Id.). Plaintiff had normal ability to pick up small objects, hold a cup, open a jar, unbutton and button, and open a door (Tr. 242). Plaintiff's ability to lift and carry was restricted, but would be only mildly decreased once his right knee recovered (Tr. 239).

Plaintiff went to the VA in January 2004 for a physical therapy consultation for his chronic neck and back pain and right knee and hip pain (Tr. 262). He complained of his right knee giving out and of an episode of numbness followed by knee pain (Id.). A TENS unit was ordered (Id.).

On February 18, 2005, Dr. Salomon responded to a questionnaire that assessed Plaintiff's ability to work (Tr. 428-30). He opined that Plaintiff could lift/carry very little (Id.). He concluded that in an eight-hour work day, Plaintiff could sit two hours, stand one hour, and walk one half hour (Tr. 429). He further concluded that Plaintiff could never climb, balance, kneel, crawl, bend, stoop, or crouch; his ability to reach handle and feel was affected; and he had to avoid heights, moving machinery, temperature extremes, and vibration (Tr. 429-30).

Dr. Singh examined Plaintiff for the third time on March 2, 2005 (Tr. 352). Dr. Singh noted that Plaintiff walked slowly using a walker (Id.). Plaintiff could heel and toe stand, stand on either foot, and squat half-way (Tr. 353). Plaintiff's right knee had no swelling or inflamation (Id.). Plaintiff's complaints of decreased sensation over the right leg did not conform to any nerve or nerve root pattern (Tr. 352). Cervical and dorsolumbar spine motion was slightly reduced, extremity motion was normal, and bilateral straight leg raising was normal (Tr. 352, 355-57). Plaintiff had normal bilateral grasp, manipulation, pinch, and fine coordination (Tr. 354). Plaintiff had normal or reduced reflexes, normal muscle strength, no atrophy and no spasm (Tr. 352, 354-55). Plaintiff had normal ability to pick up small objects, hold a cup, open a jar, button, and open a door (Tr. 355). Plaintiff was able to handle and manipulate objects with either hand quite well (Tr. 352). Plaintiff could sit and stand normally, but his ability to lift and carry was moderately reduced (Id.). Dr. Singh concluded Plaintiff had several subjective symptoms, though the underlying objective evidence was not clear (Id.). Dr. Singh also found there was no clear pattern of cervical or lumbar radiculopathy, the sensory deficit in the right leg seemed to be non-anatomical, and there was some question of a subjective element (Id.). Dr. Singh stated that an MRI of the lumbar spine and right would be helpful to rule out underlying disc disease or ligament tear (Id.).

On March 29, 2005, Plaintiff underwent a psychological exam (Tr. 358). Plaintiff told a psychologist he drove his wife's van around the community, built model cars and planes, and played video games (Tr. 359). The psychologist indicated that Plaintiff suffered from an adjustment disorder with depressed mood (Tr. 360). Plaintiff could probably meet basic interaction demands with peers or supervisors in a mildly competitive work setting, but he would

have difficulty with novel interactions required of meeting with the general public (Id.).  He could do routine tasks in a competitive workplace, but has mild impairment in maintaining attention, concentration, persistence, and pace (Id.).  And his ability to withstand the stresses and pressures of a competitive workplace is mildly impaired (Id.).

Plaintiff underwent an MRI of the lumbar spine on June 26, 2006 (Tr. 394-95).  At L4-L5, there was moderate diffuse disc bilge with moderate bilateral neural foraminal narrowing, the disc bulge contacted the nerve roots in neural foramina, there were mild facet degenerative changes, and there was mild canal stenosis (Tr. 395).  At L3-L4, there was mild disc bulge with no significant neural foraminal narrowing (Id.).  From L1 to L3, there was no disc herniation, disc bulge, or neural foraminal narrowing (Id.).  The impression was congenital short pedicles, mild L4-L5 spinal canal stenosis, and moderate bilateral neural foraminal narrowing (Tr. 396).

A primary care note from a routine visit at the VA on October 25, 2006 indicated that despite the TENS unit, Plaintiff rate his pain at a nine out of ten, and on some days could not get out of bed (Tr. 416).  On other days, Plaintiff reported that he could walk fairly well (Id.).

Plaintiff underwent a physical exam at the VA on November 1, 2006 (Tr. 409-13). Plaintiff was walked with a cane, had a tender left paralumbar with straight leg raising of both legs resulting in pain to the low back (Tr. 411).  Plaintiff's deep tendon reflexes of the left patellar were diminished (Id.).  On November 30, 3006, Plaintiff began pain management at the VA (Tr. 30, 407).

Plaintiff reported at his routine March 28, 2007 examination that his pain was starting to radiate up his back (Tr. 433).  Plaintiff's lower extremities were without tenderness or edema (Tr. 435).  Plaintiff was diagnosed with diabetes (Tr. 436).

### C.  Hearing Testimony

Plaintiff testified at his March 21, 2007 administrative hearing that he injured his back and began having seizures in 1988 (Tr. 480-81).  He was discharged from the Navy in 1989 due to a personality disorder and receives a 10 percent VA pension for his seizures (Tr. 479, 481). Plaintiff left his job as a truck driver because he injured his back in a car accident while trying to avoid hitting a child who ran out in front of him in October 2001 (Tr. 480, 483-84).  Plaintiff no longer drives much and only drives when someone is with him (Tr. 481).

Plaintiff testified that he has memory retention problems that have existed since he was in seventh grade (Tr. 482).  He is able to read a newspaper, but his writing is "non-existent" (Id.). However, the main problems that prohibit Plaintiff from working full time are his lower back pain and the loss of feeling in both of his legs (Tr. 483).  The numbness in his right leg began approximately six weeks after his 2001 car accident and it began in his left leg approximately six months before the hearing (Id.).  Plaintiff testified that he cannot walk up or down more than two steps and that he must walk with a cane or walker when walking on a flat surface (Tr. 485-86). Plaintiff also testified that he shakes a lot and could not thread a needle (Tr. 490).

Plaintiff further testified that he does not leave his bed for more than one hour a day most days (Tr. 492).  He does not go anywhere unless he is accompanied by someone because he is afraid of further injury due to the numbness in his legs, falling, and seizures (Tr. 492). According to Plaintiff, he does not perform any household chores and does not bathe without assistance from someone because it is hard to get in and out of the tub (Tr. 493).

Vocational Expert ("VE") Dr. Andrew Beale also testified at the administrative hearing (Tr. 497).  The ALJ asked the VE to consider a hypothetical individual who could perform

unskilled light work that was performed indoors and did not require direct contact with people (Tr. 498). The VE testified that such an individual could perform the jobs of laundry worker (16,00 jobs in the State) or janitor (26,000 jobs in the State) (Tr. 498-99). Plaintiff's counsel began to ask the VE another hypothetical question in which the individual's grip strength is in the tenth percentile, meaning that the individual could not use his hands for simple grasping, could not use a broom, could not sort clothes, and could not pick up a trash can (Tr. 502). The ALJ interrupted and asked the VE to consider if the individual could drive (Id.). The VE responded that if the individual could drive, he could do the jobs identified because driving would require griping the steering wheel, opening the door, putting the key in the ignition, and engaging the gears (Tr. 502-03). After this response, Plaintiff's counsel stated that he had no further questions for the VE (Tr. 503).

### III. **DISABILITY STANDARD**

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 Shepardize (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. Listing § 1.04A

Plaintiff first claims that this case must be remanded so that a medical expert ("ME") can be retained to render an opinion as to whether he meets or equals a Listing because "it appears" he meets Listing § 1.04A. Plaintiff provides no explanation or support for these assertions. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997); *see also Rice v. Comm'r of Soc. Sec.*, 169 Fed. Appx. 452, 454 (6th Cir. 2006). Moreover, a review of these claims shows that they are meritless.

The use of a medical expert is not mandatory unless the evaluation and interpretation of background medical test data is required or unless the use of a medical expert is ordered by the Appeals Council or a court. *See* HALLEX I-2-534. There is no evidence that the ALJ in this case engaged in the interpretation of background medical test data or that the use of an ME was ordered by the Appeals Council or a court. Accordingly, the use of an ME in this case was not required.

There is also insufficient evidence to demonstrate that Plaintiff meets or equals the criteria of Listing § 1.04A. This listing requires a disorder of the spine with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Part 404, Subpt. P, Appendix 1, § 1.04A. Although Plaintiff has a spine impairment with mild stenosis, there is no evidence of nerve root compression or motor loss. There is no

evidence of positive straight-leg raising, aside from November 1, 2006 treatment notes, which indicate Plaintiff had pain with straight leg raising, but do not indicate the specific results of the test (Tr. 411).

**B. The ALJ's Evaluation of the Evidence with Respect to Plaintiff's Back Condition**

Plaintiff next argues the ALJ failed to support his rejection of the opinion of Plaintiff's treating physician, Dr. Salomon, in relation to Plaintiff's MRI with substantial evidence, and improperly relied on the opinion of consultative examiner Dr. Singh. Plaintiff's arguments are not well taken.

The weighing of medical evidence is the province of the Commissioner. Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts. *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). The ALJ, however, is bound by the Social Security Regulations when doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544, 545 (6th Cir. 2004). The regulations clearly require a treating physician be given controlling weight should his opinion be well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). Indeed, the opinion of a treating physician is afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)*; Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Although the regulations ensure an ALJ is not bound by the opinion of a claimant's treating physician, if he chooses to reject said opinion, the ALJ must articulate a good reason for doing

so. *See Shelman*, 821 F.2d at 321. Specifically, if a treating source is not accorded controlling weight, the ALJ must apply certain factors – the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. Even still, the reasons offered for a credibility determination need not only comply with these factors, they must also be "good." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 545. Indeed, courts have consistently remanded Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source as required by 20 C.F.R. § 404.1527(d)(2). *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

The ALJ's written decision reflects that he considered the record as a whole and adequately explained the reasoning behind his ultimate conclusions. In finding that Plaintiff retains an RFC for a range of unskilled light work, the ALJ noted the evaluations of Drs. Singh and Salomon.

Dr. Singh evaluated Plaintiff on three separate occasions over a period of more than two years and his evaluations yielded consistent results. Dr. Singh found Plaintiff had normal ability to grasp and manipulate, no muscle spasm or atrophy, and normal range of motion in his shoulders, elbows, wrists, fingers and hands, hips, and ankles (Tr. 213-14, 342-43, 355-57). Plaintiff's cervical flexion, extension, and rotation was slightly reduced in 2002, but normal in 2003 (Tr. 213, 242). Although Plaintiff's range of motion in his dorsolumbar spine was greatly reduced in 2003, reliability was questionable (Tr. 243). Dr. Singh noted that Plaintiff had recently twisted his knee and thus would not bear weight on that leg (Tr. 238). Plaintiff's range

of motion in his dorsolumbar and cervical spine was reduced in 2005, but there was no swelling or signs of acute inflammation, and although there was tenderness, no muscle spasm was present (Tr. 351-52). Dr. Singh noted that Plaintiff had several subjective symptoms for which there was no underlying objective evidence (Tr. 352).

The ALJ reviewed Dr. Singh's evaluations and pointed out contradictions between Plaintiff's allegations and Dr. Singh's findings (Tr. 27-28). The ALJ also reviewed Plaintiff's June 2006 MRI findings, which showed no disc herniation, but mild canal stenosis, mild disc bulge without significant narrowing, mild degenerative changes, and a disc bulge that contacted the nerve roots, but without evidence that the roots were impinged or seriously compromised (Tr. 28). The ALJ next reviewed Dr. Salomon's opinion. Dr. Salomon opined in February 2005 that Plaintiff can lift and carry very little; can sit two hours, stand one hour, and walk one-half hour in an eight-hour work day; can never climb, balance, kneel, crawl, stoop, or crouch; has limitations in reaching, handling, and feeling; and must be restricted from work involving heights, moving machinery, and vibration (Tr. 428-30). Thus, the ALJ's decision shows that he confronted the opinions of both Dr. Singh and Dr. Salomon and the MRI results.

The ALJ also articulated good reasons for rejecting Dr. Salomon's opinions in relation to the MRI. The ALJ concluded that Dr. Salomon's opinion was not supported by the record evidence, despite the fact that he is Plaintiff's primary care provider (Tr. 28). The ALJ explained that Dr. Salomon's opinion appeared to be based solely on Plaintiff's subjective complaints (Id.). Although Dr. Salomon essentially opined that Plaintiff is precluded from working, the ALJ explained that even with the MRI findings of Plaintiff's lumbar spine in 2006, there is little evidence to support Dr. Salomon's assessment (Id.). The ALJ's decision reflects

that he considered the factors of the length of Dr. Salomon's treating relationship with Plaintiff, the nature and extent of the relationship, the supportability of Dr. Salomon's opinion, and the consistency of his opinion with the record as a whole in compliance with 20 C.F.R. § 404.1527(d).

There is substantial evidence to support the ALJ's treatment of Dr. Salomon's opinion. Even if a physician is classified as a treating physician, his opinion may be afforded little weight if the Plaintiff fails to show his impairments are supported by contemporaneous, objective clinical or diagnostic findings. *See Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 993 (6th Cir. 2007) (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Moreover, if the treating physician's conclusions are based, in large part, on Plaintiff's subjective complaints of pain, the ALJ's decision to disregard the doctor's opinion is proper. *Id.*; *see also Young v. Secretary of Health & Human Servs.* 925 F.2d 146, 151 (6th Cir. 1990). Aside from the MRI, there are no records of objective testing performed by Dr. Salomon. His treating notes consist mostly of written summaries of Plaintiff's complaints and reflect that Plaintiff typically only saw him for routine visits. In fact, in March 2003, Plaintiff returned to Dr. Salomon after a five month absence. Moreover, other evidence in the record contradicts Dr. Salomon's February 2005, opinion. In October 2002, a state agency medical consultant opined that Plaintiff retained an RFC to perform light work, is unlimited in pushing and pulling, and is limited to occasional stooping and crouching (Tr. 231-35). The consultant found Plaintiff was only partially credible (Id.). In September 2003, another consultant opined that Plaintiff retains an RFC for light work and is unlimited with pushing and pulling (Tr. 246). And, the record shows that Plaintiff went through physical therapy with good results in 2002 (Tr. 327-28). In

contrast to Dr. Salomon's records, Dr. Singh's evaluations consist of extensive objective testing and evaluation of Plaintiff's subjective complaints in light of the objective test results.

Based upon the above, the Magistrate Judge concludes the ALJ weighed the opinions of Drs. Singh and Salomon in accordance with the applicable law and gave adequate support for his rejection of Dr. Salomon's opinion in relation to Plaintiff's MRI.

### C.  Plaintiff's Dynamometer Readings

Plaintiff next claims the ALJ erred by not addressing his dynamometer readings, which he contends show that his grip strength is reduced to less than the tenth percentile.

Dr. Singh took Plaintiff's dynamometer readings on August 22, 2002, September 3, 2003, and March 2, 2005 (Tr. 212, 241, 254).  At the same time, Dr. Singh also assessed Plaintiff's ability in grasping, manipulating, pinching, and fine coordination and found them to be within normal limits on all three occasions (Id.).  Dr. Singh found Plaintiff had normal strength in his wrist and fingers (Tr. 213, 243, 356).  In addition, Dr. Singh concluded Plaintiff was able to handle and manipulate objects with either hand quite well, and had normal ability to pick up a coin, key, write, hold a cup, open a jar, button and unbutton, zipper, and open a door (Tr. 210, 239, 242, 352, 355).  Plaintiff testified that he is able drive a car, which requires the ability to open the door, put the key in the ignition, engage the gears, and grip the steering wheel.  Dr. Singh's findings, along with Plaintiff's own testimony, provide substantial evidence to support the ALJ's decision not to assess RFC limitations for Plaintiff's grip strength.

The ALJ discussed all three of Dr. Singh's evaluations in his decision.  Although he did not specifically address Dr. Singh's findings with respect to Plaintiff's grip strength, the ALJ is not required to address every piece of evidence in the record. *See Kornecky v. Comm'r of Soc.*

*Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. Feb. 9, 2006). There is no evidence that the ALJ engaged in "picking and choosing" of evidence in relation to Plaintiff's grip strength, "relying on some and ignoring others, without offering some rationale for his decision." *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004). Accordingly, the Magistrate Judge concludes the ALJ did not err by not addressing Plaintiff's dynamometer readings.

### D. Social Security Rulings 85-15p and 96-9p

Plaintiff also argues the ALJ erred by failing to address Social Security Rulings 85-15p and 96-9p. However, neither of these rulings are applicable to the present case. Social Security Ruling No. 85-15p is a revision of earlier rulings and its purpose is to emphasize issues relating to mental impairments. Plaintiff has not set forth any arguments in his brief regarding any alleged mental impairments. Social Security Ruling No. 96-9p's purpose is to explain the Social Security Administration's policies regarding the impact of an RFC assessment for a less than full range of sedentary work on an individual's ability to perform other work. Plaintiff claims this ruling indicates that significant manipulative limitations on a person's ability to handle small objects will significantly erode the occupational base. However, the ruling actually states that because most unskilled *sedentary jobs* require good use of both hands and fingers, any significant manipulative limitation in this ability will result in a significant erosion of the unskilled *sedentary occupational base*. S.S.R. No. 96-9p. In the present case, the ALJ found that Plaintiff can perform a range of light work and thus, this ruling is inapplicable. Moreover, as explained previously, there is substantial evidence in the record indicating that Plaintiff has normal ability to handle and manipulate objects. Accordingly, the Magistrate Judge concludes Plaintiff's claims with respect to Social Security Rulings 85-5p and 96-9p are meritless.

### E. The ALJ's Reliance on the VE's Testimony

Plaintiff also claims the ALJ erred by posing an inaccurate hypothetical to the VE. Plaintiff states that the ALJ failed to include the following restrictions in his hypothetical questions to the VE:

- Grip strength in less than 10th percentile as of 2003, which according to SSR 85-15, would preclude light work.
- He loses feeling in his legs, resulting in a fall. He falls around 2-3 times a week. He trips a lot.
- Plaintiff must use a cane, therefore, lifting, carrying, standing and walking must be limited to activities permitting use of a cane. Plaintiff has an antalgic gait.
- Mr. Odum must use both hands to go up stairs, even going up two step [sic].
- Limitations imposed by Dr. Salomon in his Medical Assessment of February 18, 2005.
- A position where the claimant is not required to write.

(internal citation omitted).

Plaintiff offers no explanation or support for his bare assertion that these limitations should have been included in the ALJ's hypothetical question to the VE. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995-96; *see also Rice*, 169 Fed. Appx. at 454. Moreover, a review of Plaintiff's assertions shows that they are meritless.

As explained previously, the ALJ did not err by declining to include limitations regarding Plaintiff's grip strength in his RFC assessment or by declining to give controlling weight to Dr. Salomon's opinion. All of the remaining limitations listed above are allegations or subjective

complaints made by Plaintiff. However, Plaintiff has not pointed to any objective evidence in support of these alleged limitations. Moreover, Plaintiff has not raised any issues with respect to the ALJ's credibility assessment of Plaintiff. The ALJ's decision reflects that he thoroughly discussed Plaintiff's allegations and reasonably concluded Plaintiff's statements were not entirely credible. The ALJ explained that although Plaintiff alleges "staring spells," the record is devoid of any mention of this occurrence (Tr. 27). The ALJ noted that the medical record did not include any prescribed medication for pain, aside from a TENS unit and a non-asteroidal anti-inflammatory, despite Plaintiff's allegation that his limitations are so severe that he is precluded from working (Id.). The ALJ also noted that the most significant lumbar finding is mild arthritis and congenital stenosis, and that there is no significant nerve impingement which would result in totally numbing radiculopathy down Plaintiff's right leg, as alleged (Id.). Dr. Singh found Plaintiff was able to sit and stand normally (Id.). There was no evidence of spasm and straight leg raise testing was bilaterally normal (Id.). And although the MRI showed a disc bulge that contacted the nerve roots, there was no impression that the nerve roots were impaired or seriously compromised (Tr. 28). For these reasons, the ALJ explained, the record evidence does not support Plaintiff's allegations that he is basically limited to lying in bed all day.

Based upon the above, the ALJ concludes the ALJ did not err in his credibility assessment or by declining to include the limitations asserted by Plaintiff in his hypothetical question to the VE.

## VI. **DECISION**

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: August 26, 2008


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).